## CLARK AS AD. VS. HOLT.

16  257·
71  221|

In passing upon a question of law arising upon a demurrer to a plea in the court below, this court will look alone to the plea and the declaration to which it responds. Allegations or denials contained in other pleas, upon which no question arises on the appeal, are not to be regarded, in determining the sufficiency of the plea demurred to.

By the common law, the powers of executors, administrators, and guardians, as such, did not extend beyond the limits of the local government, in which they were appointed, for the purpose of bringing suits, and our statute was designed to enlarge their powers.

The disposition of the personal estate of any one deceased, is determined by the law of the domicil; and if he has effects in a foreign jurisdiction, and administration be there granted on his estate, it is merely ancillary or auxiliary to the administration of the domicil, so far as regards the collection of the effects and the proper disposition of them, but subservient to the rights of creditors, legatees and distributees, who are resident in the country where the ancillary administration is granted.

Where letters of administration have been granted on the estate of a deceased person, by the proper authority in one State, and afterwards his will probated in another State, the place of his domicil, and letters testamentary granted by the proper authority, the letters of administration, previously granted, are not thereby vacated.

Where slaves, held by an ancillary administrator in another State, have been taken from his possession, or pass to the possession of the defendant, by virtue of a bailment, such administrator would have the right to institute an action for their recovery in this State, although there may be a principal administration in some other State.

*Appeal from the Circuit Court of Pulaski County.*

Hon. WILLIAM H. FEILD, Circuit Judge.

FOWLER, for the appellant. The plea tendered no *material* issue. It does not show that letters testamentary were granted to *anybody*. If it had done so, it could not affect *Clark's* letters granted in *Tennessee*, or his right to sue, as administrator, under our statute.

If *letters testamentary* had been granted in *Kentucky*, under general principles of law, they would have been *wholly inoperative* in *Tennessee*. See *Fendwick vs. Sear's admr.*, 1 *Pet. Cond. Rep.* 310; *Dixon's ex. vs. Ramsey's ex.*, 1 *Pet. Cond. Rep.* 548; *Kerr vs. Moon*, 5 *Pet. Cond. Rep.* 685; *Story Conflict of Laws*, sec. 511, 512; *et seq.* 523.

*But*, the mere *statement* of a *probate* falls far short of *displacing* an administrator, even in the *State* where the *probate* is made. *Newton ex. vs. Cocke ex.*, 10 *Ark. Rep.* 176.

Our *statute* expressly authorizes any foreign *executor* or *administrator*, to *sue*, and if half a dozen of them had been appointed in as many *different States*, any one of them would have a *right* to sue here; and the one who *first commenced the suit* could not be interfered with at law, by any of the others, or by a *defendant*. Such a proceeding would be a virtual nullification of the statute. See *Ark Digest*, *(edition of* 1848,) *p.* 147, *ch.* 7, *sec.* 1; *Story Conflict of Laws*, sec. 521.

Even, if the *probate* of the *will* (or a *grant* of letters, had such been the fact) would have operated in *Kentucky* as a revocation of letters of administration in *that State*, such *revocation* could not extend beyond the *territorial limits* of *Kentucky* into *Ten-*

*nessee* or *Arkansas.* See *Story Confl. of Laws, sec.* 7, 22, 23, 33 *to* 37, *sec.* 98.

CURRAN & GALLAGHER, for the appellee. It has become a settled principle of international jurisprudence, and one founded on a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to and distribution of personal property, wherever situated, is governed by the laws of the country of the owner's or intestate's DOMICIL, at the time of his death, and NOT by the CONFLICTING LAWS of the various places where the goods happened to be situated. 2 *Kent's Com., page* [*marginal*] 429, *et seq.*

"To hold that the *lex loci rei sitæ* was to govern as to personal property when the domicilium of the intestate was in a different country, would be a gross misapplication of the *jus gentium* ["per Lord THURLOW, in the case of *Bruce vs. Bruce,* 2 *Boss. & Pull.* 229 *note.*] *Ib.* 430.

Personal property is governed by the *lex domicilii,* real property by the "*lex rei sitæ.*" *Story Con. of Laws, sec.* 464.

"It is a clear proposition, not only of the law of England, but of every country in the world where law has the semblance of a science, that personal property has no locality. The meaning of this is not that personal property has no visible locality, but that it is subject to that law which governs the person of the owner; both with respect to the disposition of it and with respect to the transmision of it, either by succession or by the act of the party, "*it follows the law of the person.*" Lord LOUGHBOROUGH, (*Sill vs. Worswick,* 1 *H. Black.* 690,) and Judge STORY commenting on the above, says: "And this doctrine has been constantly maintained both in England and America, with unbroken confidence. *Story's Con. of Laws, sec.* 380; 2 *H. Black.* 402; *Holms vs. Remsen,* 4 *John Ch. R.* 460; *Piper vs. Piper, Ambler Rep.* 25; 2 *Bell. Com.,* 2 *to* 10; *Greer vs. O'Daniel,* 2 *Bin. R.* 349.

Probate is not the foundation, but only the authenticated evidence of the executor's title, for he derives all his interest from

the will itself, and the property of the deceased vests in him from the moment of the testator's death. 1 *Williams on Ex.*, *p.* 172; *Henslie's case*, 9 *Co.* 380; *Graysbrook vs. Fox*, *Plowd.* 281; *Comber's case*, 1 *P. Wms.* 767; *Smith vs. Miller*, 1 *T. R.* 480; *Wolley vs. Clark*, 5 *B. & A.* 744; *S. C.*, 1 *Dowl. & Ryl.* 409. Hence, the probate when produced, is said to have relation to the time of the testator's death. *Ib. Graysbrook vs. Fox*, *Plowd.* 381; *Went. Ex.* 81; 2 *Starkie on Evidence* 616.

On proving the will, letters of administration previously granted, *are* VOID. *Toller L. of ex.* 113; 1 *Com. Digest*, 368; 14 *Peters* 39; 1 *Sterne* 429; 2 *Ld. Raymond* 829.

If the grant of letters of administration are void, the mesne acts of the administrator done between the grant and its revocation, shall be of no validity: as if administration be granted on the concealment of a will, and afterwards a "will" appear, inasmuch as the grant was void from its commencement, all acts performed by the administration in that character, shall be void equally, nor can they, although the executor should refuse to act, be made good by relation. 1 *Williams ex.* 400; *Abram vs. Cunningham*, 2 *Lev.* 182; *S. C.*, *Freeman* 445; 1 *Vent.* 363; 2 *Mod.* 146; *T. Jones* 72; 3 *Keb.* 725.

So in *Graysbrook vs. Fox*, *Plowden* 276, an action of detinue was brought by an executor against the defendant, who had purchased goods belonging to the testator, from one to whom the ordinary had, immediately after the testator's death, and before the executor had proven the will, granted administration; and it was holden that the executor, who sued after probate, might recover. *Ib* 301.

So, if administration be granted before the refusal of the executor, a sale by the administrator of the testator's effects, shall be void, although the executor aforesaid appear and renounce. *Ib. Abram vs. Cunningham*, 2 *Lev.* 182. Or if the executor omit proving the will, whereby administration is granted to a debtor, the executor may afterwards prove it, and then sue the administrator for the debt which is not extinguished by the ad-

ministration. *Ib. Baxter & Boles case*, 1 *Leon* 90; *O. K. vs. Needham*, 1 *Brownl.* 69.

A release by an administrator, under a void grant, is invalid. *Throckmorton vs. Hobby*, 1 *Brown* 51.

Wherever a grant of letters of administration is in derogation of the rights of an executor, it is void. *Ib.* 404. *Semme vs. Semme*, 2 *Lev.* 90; *S. C., T. Raymond* 224; *Syme vs. Syme.*

We suppose that it is a point beyond caviling, that neither by the *jus gentium*, nor by the common law, is a foreign executor or administrator entitled to maintain a suit in our courts, in virtue of his original letters of administration : (2 *Story on Conflict of Law, sec.* 515, *et seq.*,) but derives such right from our express statutes alone : but inasmuch as our statutes are in derogation of the common law, they must be strictly construed.

Where there are different administrations granted in different countries, those which are in their nature ancilliary, are, as we have seen, generally held subordinate to the original administration. *Story's Con. of Laws, sec.* 518.

The right of the foreign executor or administrator to take out such new administration, is usually admitted, as a matter of course, unless some special reasons intervene, and the administration is treated as merely auxiliary to the original foreign administration, so far as regards the collection of the effects and the proper distribution of them. *Ib., sec.* 513; *Harvey vs. Richards*, 1 *Mason Rep.* 381; *Stevens vs. Gaylard*, 11 *Mass. Rep.* 256; *Case of Miller's estate*, 3 *Rawl. Rep.* 312; *Dawes vs. Royston*, 9 *Mass.* 337; *Selectmen of Boston vs. Boylston*, 4 *Mass.* 318, 384; *Richards vs. Dutch*, 8 *Mass.* 506; *Dawes vs. Head*, 3 *Pick.* 128; *Hooker vs. Olmstead*, 6 *Pick.* 481; *Davies vs. Estey*, 8 *Pick.* 475; *Jamieson vs. Hapgood*, 10 *Pick.* 77.

One of two persons, both subjects of, and domiciled in the same foreign country, dies indebted to the other, and an original administration is granted in the foreign country, and an ancillary one here, held that such debt, though it may have been contracted here, must be referred for settlement to the original admin-

istration. *Thomas Dawes Judge, &c. vs. Joseph Head et al.,* 3 *Pick. Rep.* 127.

These cases are analogous to the case now before the court, because there is no question concerning the payment of any debts, but solely who is entitled to receive the property.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

In Nov., 1849, Bennett G. Clark, as administrator of John Clark, deceased, brought an action of replevin in the Pulaski Circuit Court, against Mrs. Jane J. Holt, for the recovery of six slaves; making profert of letters of administration, granted to him by the Circuit Court of Davidson county, in the State of Tennessee. The declaration contained one count in the *cepit,* and one in the *detinet.*

At the return term, the defendant filed fifteen pleas in bar, to some of which, in the progress of the pleadings, issues were taken, demurrers sustained to others, and others stricken from the record.

At the December term, 1851, the court permitted the defendant, on showing cause, to file two additional pleas: 1st. *Ne unques administrator,* to which the plaintiff took issue.

2d. *Actio non,* "because she says that said John Clark made and published his last will and testament, in due form, and the same was in full force, and not in any manner revoked, vacated or annulled at the time of his death. That said John Clark resided, and was domiciled, at the time of his death, in Allen county, in the State of Kentucky, and after the said grant of administration to said plaintiff, as in said declaration is supposed, that said last will and testament of said John Clark, deceased, was in due form of law, proved, established, and probated before and admitted to record by the county court of said county of Allen, in the State of Kentucky, being the court, which by the law of said State of Kentucky, had exclusive jurisdiction and cognizance of such matters. Which said proceedings of said county court still remain in full force, not in any manner reversed or set aside; and this, said defendant is ready to verify, wherefore he prays judgment, &c.

To this plea, the plaintiff demurred, on the grounds: 1st. That it neither tendered a material issue, nor stated any fact upon which a material issue could be formed.

2d. That the probate of the will in Kentucky, as alleged, could not affect the administration granted to the plaintiff in Tennessee, or impair his right to maintain this suit, under the statutes of Arkansas, &c.

The court overruled the demurrer, the plaintiff rested, final judgment was rendered for defendant, and the plaintiff appealed.

The sufficiency of the plea copied above upon demurrer, is the only question now presented for the decision of this court. In passing upon this question, we are to look alone to the plea, and the declaration to which it responds. Allegations or denials contained in other pleas in the cause, and upon which no question arises on this appeal, are not to be regarded in determining the sufficiency of the plea demurred to. It must stand upon its own allegations.

*Section* 1, *chap.* 7, *Digest,* provides: "That administrators, executors, and guardians, appointed in any of the States, Territories, or districts, of the United States, under the laws thereof, may sue in any of the courts of this State, in their representative capacity, to the same and like effect as if such administrators, executors, or guardians, had been qualified under the laws of this State."

By the common law, the powers of executors, administrators, and guardians, as such, did not extend beyond the limits of the local governments in which they were appointed, for the purpose of bringing suits, and this statute was designed to enlarge their powers. How far it enlarges the powers of ancilliary administrators, is an interesting and an unsettled question in this State.

Reference to some general principles of the common law may enable us to determine the object and effect of this statute, as far as required in this case. It is a general and well settled rule, that the disposition of the personal estate of any one deceased, is de-

termined by the law of his domicil.   _Crofton vs. Ilsby_, 4 _Greenlf. Rep._ 138.

STORY says, be the origin of this doctrine what it may, it has so general a sanction among all civilized nations, that it may now be treated as a part of the _jus gentium._   _Story's Conflict of Laws,_ sec. 380, (2d _edition._)

Lord LOUGHBOROUGH said, in _Sill vs. Worswick_, 1 _H. Black._ 690, "It is a clear proposition, not only of the law of England, but of every country in the world where law has the semblance of science, that personal property has no locality. The meaning of that is, not that personal property has no visible locality; but that it is subject to that law which governs the person of the owner; both with respect to the disposition of it, and with respect to the transmission, either by succession, or by the act of the party. It follows the law of the person. The owner in any country may dispose of his personal property. If he dies, it is not the law of the country, in which the property is, but the law of the country of which he was a subject, that will regulate the succession."

Lord Ch. J. ABBOTT, _in Doe on dem., Burtwhistle vs. Vardill_, 5 _Barn. & Cress._ 351, said: "Personal property has no locality. And even with respect to that, it is not correct to say that the law of England gives way to the law of the foreign country, but that it is part of the law of England, that personal property should be distributed according to the _jus domicilii._"

STORY, after quoting from these decisions, remarks, that "the same doctrine has been constantly maintained, both in England and America, with unbroken confidence, and general unanimity." _Story's Confl. Laws_, sec. 380. See the authorities cited, in support of this remark by STORY, and cases cited in 2d _American Edition to Jarmin on Wills, by Perkins_, p. 3, note 2. This rule is understood, of course, to be subject to such modification as may be made by the legislation of any State within whose jurisdiction the personal property may be situated. _Story's Confl. Laws_, sec. 383, 390.

"In regard to the title of executors and administrators, derived from a grant of administration in the country of the domicil of the deceased, it is to be considered that that title cannot, *de jure*, extend as a matter of right, beyond the territory of the government which grants it, and the movable property therein. As to movable property, situated in foreign countries, the title, if acknowledged at all, is acknowledged *ex comitate*; and, of course, it is subject to be controlled or modified, as every nation may think proper, with reference to its own institutions and its own policy, and the rights of its own subjects. And here the rule, to which reference has been so often made, applies with great strength, that no nation is under any obligation to enforce foreign laws, prejudicial to its own rights, or those of its own subjects. Persons, domiciled and dying in one country, are often deeply indebted to foreign creditors, living in other countries, where there are personal assets of the deceased. In such cases, it would be a great hardship, upon such creditors, to allow the original executor or administrator to withdraw those funds from the foreign country, without the payment of such debts, and thus to leave the creditors to seek their remedy in the domicil of the original executor or administrator, and perhaps there to meet with obstructions and irregularities in the enforcement of their own rights from the peculiarities of the local law. *Ib.*, *sec.* 512.

"It has hence become a general doctrine of the common law, recognized both in England and America, that no suit can be brought or maintained, by any executor or administrator, or against any executor or administrator, in his official capacity, in the courts of any other country except that from which he derives his authority to act, in virtue of the probate and letters testamentary, or the letters of administration there granted to him. But if he desires to maintain any suit in any foreign country, he must obtain new letters of administration, and give new security, according to the general rules of law, prescribed in that country, before the suit is brought." *Ib.*, *sec.* 513.

"The right of a foreign executor or administrator to take out
18ᴮ

such new administration, is usually admitted, as a matter of course, unless some special reason intervene to vary or control it; and the new administrator is treated as *merely ancillary or auxiliary to the original foreign administration, so far as regards the collection of the effects, and the proper distribution of them.* Still, however, the new administration is made subservient to the rights of creditors, legatees, and distributees, who are resident within the country where it is granted, and the residuum is transmissible to the foreign country, only, when a final account has been settled in the proper tribunal, where the new administration is granted, upon the equitable principles adopted by its own law, in the application and distribution of those assets found there." *Ib., sec.* 513; *Dawes vs. Head,* 3 *Pick. R.* 128.

Moreover, says the same author, (STORY): "It is exceedingly clear that the probate, and grant of letters testamentary, or of administration in one country, give authority to collect the assets of the testator or intestate only in that country, and do not extend to the collection of assets in foreign countries, for that would be to assume an extra-territorial jurisdiction or authority, and to usurp the functions of the foreign local tribunals in those matters." *Confl. Laws, sec.* 514.

In *Doolittle vs. Lewis,* 7 *John. Ch. R.* 45, 47, Mr. Chancellor KENT, said : "It is well settled that a party cannot sue or defend in our courts, as executor or administrator, under the authority of a foreign court of probate. Our courts take no notice of a foreign administration; and before we can recognize the personal representative of the deceased, in his representative character, he must be clothed with authority derived from our law. Administration only extends to the assets of the intestate within the State where it is granted ; if it were otherwise, the assets might be drawn out of the State, to the great inconvenience of the domestic creditors, and be distributed perhaps on very different terms, according to the laws of another jurisdiction."

Again, STORY says: "Where there are different administrations granted in different countries, that is deemed the prin-

cipal or primary administration, which is granted in the country of the domicil of the deceased party; for the final distribution of his effects among his heirs or distributees, is to be decided by the law of his domicil. Hence, any other administration, which is granted in any other country, is treated as in its nature ancillary merely, and is, as we have seen, generally held subordinate to the original administration. But each administration is nevertheless deemed, so far independent of the others, that property received under one cannot be sued for under another, although it may, at the moment, be locally situate within the jurisdiction of the latter." *Confl. Laws*, sec. 518.

It is alleged in the declaration and conceded by the plea, that letters of administration upon the estate of *John Clark*, deceased, were granted to the plaintiff by the county court of Davidson county, in the State of Tennessee, and we must presume in view of the above general principles of law, that though *John Clark* was domiciled in Kentucky, at the time of his death, as is also alleged by the plea, the administration was granted in Tennessee for some legal purpose in regard to his estate there.

The plea further alleges, that John Clark made a will, and that after his death, and after grant of letters of administration to the plaintiff, in Tennessee, the will was duly established, probated and admitted to record, before the county court of Allen county, in the State of Kentucky, according to the laws of that State.

It is argued by the counsel of the appellee, as the legal effect of the plea, that on the probating of John Clark's will in Kentucky, where he was domiciled, the letters granted to the plaintiff in Tennessee, became void by operation of law.

It seems by the common law, that if there be an executor, and administration be granted before probate and refusal of the executor to act, it shall be void on the will's being afterwards proved, although the will were suppressed, or its existence were unknown, or it were dubious who was executor, or he were concealed, or abroad, at the time of granting the administration. In such case,

it seems, the administration is a mere nullity, the ordinary having no power to divest the executor's interest. *Toller on Executors*, 120, 121; *Kane vs. Paul*, 14 *Peters* 33.

Whether the will of John Clark named an executor or not, or whether on the probate of the will, letters testamentary or of administration with the will annexed, were granted by the county court of Allen county, to any one, does not appear from the plea. But, putting the case in the strongest attitude for the appellee, let it be supposed that the allegation in the plea, that the will was duly *probated* according to law, &c., implies the grant of authority to some one to execute it, and then what is the legal effect of the matter pleaded, upon the rights of the appellant, as alleged in his declaration?

If administration had been granted upon the estate of John Clark by the proper court in Kentucky, where he was domiciled, and afterwards his will had been duly probated, &c., it seems, by the common law, the administration would at least have been thereby vacated, if not void. What the local laws of Kentucky on this subject are, we do not judicially know. By our statute, in such case, it is made the duty of the probate court to revoke the letters of administration. *Digest*, *ch.* 4, *sec.* 27.

But can it be said, that the probate of the will in Kentucky, *ipso facto*, revoked and annulled letters of administration previously granted to the appellant by a competent court in Tennessee, without any application to that court to probate the will there, and for authority to act under it, within that jurisdiction, and enforce its provisions?

We are not to suppose that the county court of Davidson county, Tennessee, granted letters to the appellant for the purpose of authorizing him to administer such of John Clark's estate as was in Kentucky, where he was domicilled, or in any other State, but for the purpose of taking charge of, and administering such of his assets, rights, credits or effects, as were found within the jurisdiction of that court; and this, we have seen from the general prin-

ciples of law above quoted, that court had the right to do, and no local law of Tennessee to the contrary is averred.

On this hypothesis, there would be no necessary conflict between the administration in Kentucky, and that granted to the appellant in Tennessee, though the latter would be ancillary to the former, and the appellant would have finally to account to the executor or administrator, with the will annexed, appointed in Kentucky, that being the domicil of John Clark, and the laws of the domicil controlling the disposition of his estate, subject to the provisions of his will.

We cannot conclude, therefore, that the allegations of the plea are sufficient to show that the letters of administration, of which the appellant makes profert in his declaration, have been rendered null and void, and his right to sue, as such administrator, at all cut-off.

Again it is argued by the counsel of the appellee, as a legal question presented by the plea, that even if the probate of the will, &c., in Kentucky, did not *ipso facto* annul and make void the grant of letters in Tennessee, yet that the administration in Tennessee must be regarded as having been granted for local and not general purposes; that it could be but ancillary to the principal administration in Kentucky, and that the slaves in controversy being in Arkansas, our statute would authorize the executor or administrator of the domicil to sue here, for their recovery, and not the ancillary administrator appointed in Tennessee: that he would have no right to recover or control any assets except what was found within the local jurisdiction of the authority under which he derived his power to act.

Whatever may be the construction proper to be put upon our statute, as to the rights of ancillary administrators, appointed in other States, to sue as such in our courts generally, the particular question presented by the argument of the counsel, does not legitimately arise upon the demurrer to the plea in question.

There are two counts in the declaration: The first, in legal effect, charges the defendant with taking the slaves from the

plaintiff, as administrator of John' Clark, deceased, and with unlawfully detaining them from him. The second alleges, a bailment of the slaves by the plaintiff, as such administrator, to the defendant, and an unlawful detention of them by her, after demand, &c.

Though other pleas filed in the cause put the material allegations of the declaration in issue, yet the plea demurred to, and which is to stand, as we have above remarked, upon its own allegations, when met by demurrer, is purely a plea in confession and avoidance. It does not deny the allegations of the declaration ; but, in legal contemplation, confesses them, and seeks to avoid them by new affirmative matter.

If it be true that the defendant took the slaves from the plaintiff, as such administrator, or received them from him, or any one else acting on his behalf, and unlawfully detains them from him after demand — if he had a legal right to the possession of them, by virtue of his administration in Tennessee, and the slaves have been brought into Arkansas in violation of that right, he certainly would have a right to follow them up; and, by virtue of our statute, sue for and recover them in our courts.

If the plea had alleged, in addition to the averments which it makes, that the slaves were in Arkansas when John Clark died, and that they never were in the possession, or under the rightful control of the plaintiff, by virtue of his ancillary administration in Tennessee—that they did not constitute part of the assets, within the jurisdiction which granted to him his letters—or, perhaps, if such facts were proven upon the trial, under the issues to the declaration, then the question would properly arise, whether he could maintain the action upon any title which his intestate had to them, or whether the executor or administrator of the domicil, should not bring the action for them here. But, on this interesting question, we do not consider it proper to express any opinion now, nor do we mean to be understood as deciding, in advance, the particular mode in which such questions should be presented by the pleadings or evidence ; it is sufficient for us

to decide now, upon the validity of the plea, and we have already indicated that, in its present form, it is no bar to the action.

The judgment is reversed, and the cause remanded, with leave to the parties to amend the pleadings, and that the cause progress, according to law, and not inconsistent with this opinion.