Daniels, J.†
—The verdict was recovered for
the amount of a certificate of deposit issued by the National Marine Bank on the 14th of November, 1883. This certificate was in the usual form stating that Samuel Bingham and Caroline F. Moul *433 ton, administrators of the estate of George S. Moulton, had deposited with the bank fifty thousand dollars, payable to the order o themselves, on the surrender of the certificate, with interest at the rate of four per cent, per annum, provided that the deposit was not withdrawn within three days. Before, and at the time when the money wTas deposited, which was done by a draft, the plaintiffs had been appointed administrators of the estate of George S. Moulton, by the probate court of Windham, in the State of Connecticut, and they were acting as such at the time when this deposit was made in the bank. After that, and on the 17th of September, 1884, they applied for and received ancillary letters of administration from the surrogate of the city and county of New York, and afterwards brought this action against the bank and it's receiver, to recover this sum of money, and the interest upon it, and that result was secured by the verdict of the jury.
It has been urged in support of the appeal that as the action was in form brought by the plaintiffs as administrators, under the authority of the letters issued to them in this State, it cannot be maintained, inasmuch as the transaction upon wdiich it depends had previously transpired. But the object of issuing the letters to them in this State, was to authorize them to proceed as administrators in collecting the debts and securing the property of the estate, which might be situated, or owing in this State, and for that purpose all the authority acquired under letters of administration issued in this State was conferred upon these plaintiffs (Code Civ. Pro. § 2702). And a part of that authority was the right to collect this demand, if in fact it was, as it appears to have been, a demand owing to the estate itself.
But if the action was not regularly brought in this form by the plaintiffs, but should have been brought *434 by them as individuals, still they are at liberty to maintain it, for all the facts essential for that purpose were set forth in their complaint. And that they had farther stated the decease of the intestate and the issuing of the letters to them as administrators and the transaction with the bank in that capacity, in no manner deprives the plaintiffs of the right individually to maintain the action. All the facts disclosing their right were fully set forth, and if . the action should be by them as individuals, all that it is requisite to be made to appear for that object, has ■been alleged and stated by the plaintiffs.
It seems by their note to have been the design of the persons framing section 1814 of the Code of Civil Procedure to require actions brought upon the transactions of executors, or administrators, to be prosecuted or maintained in their representative capacity, but that design was not so expressed as to require it to be carried into effect in this action, for the causes of action there mentioned are those belonging to the executors, or administrators, in their representative capacity, which, strictly speaking, include only such causes of action as accrued daring the lifetime of the decedent. For that reason it has been held, in Thompson v. Whitmarsh, 100 N. T. 35, that this section does not include a demand accruing to the personal representatives through a disposition of the funds or property of the estate after the decease of the testator or intestate. This section in reality has, therefore accomplished no change in the law of the State as it previously existed. Upon a demand accruing to the personal representatives through such a transaction they were by that law legally authorized to maintain an action for its recovery in their own names as individuals (Merritt v. Seaman, 6 N. Y. 168; Biddle v. Wilkins, 1 Pet. 686).
But while they were at liberty to proceed in that *435 manner, the law was not compulsory that they should take that course, but they were at liberty to prosecute and maintain the action in that form, or in their representative capacity (Kane v. Paul, 14 Pet. 33).
The cases to which reference has been made by way of supporting the appeal are in no manner in conflict with this general rule of practice, but on the contrary, substantially conceded the existence of the rule as it has here been stated. What they have chiefly determined is, that a cause of action which had accrued to the testator, or intestate, cannot be united with another accruing to the personal representatives after Ms decease (Ferrin v. Myrick, 41 N. Y, 315; Austin v. Munro, 47 Id. 360; Patterson v. Patterson, 59 Id., 574).
The plaintiffs were at liberty, therefore, either to bring this action in their own names as individuals, or as representatives of this estate ; and as the facts for either action are fully stated and set forth in the complaint, they were here empowered to maintain the action if it could be sustained by them, either as individuals, or as personal representatives.
The right of the plaintiffs to recover upon the certificate of deposit was resisted upon the ground that the money had afterwards been used, by the concurrence of the president of the bank, and one of the administrators, for speculative purposes, and that the bank had substantially in that manner repaid the deposit. The evidence of James D. Fish, the president of the bank, had a tendency certainly to maintain this defense ; but it was not entitled to such degree of credit as to render it compulsory upon the jury to adopt the statement made by him as truthful, for it appeared in the course of his cross-examination that he had been engaged for a considerable period of time in using the funds of the bank in the speculations to which it was alleged this $50,000 had been devoted, and in that *436 manner he had misappropriated the funds of the bank to the extent of about $500,000, and that he was after-wards indicted for this misappropriation, and had been convicted, and was then imprisoned awaiting his sentence. The evidence given by this witness was in this manner impaired and reduced in the effect it might otherwise have received from the jury, and they were at liberty to reject the statements made by him as untruthful and unreliable. His statement was that soon after this money was received by the bank, where it appeared in fact to have been deposited, he loaned and advanced for it to Grant & Ward, a corresponding sum of $50,000, and that the loan was made with the concurrence and under the authority of Samuel Bingham, one of the plaintiffs, for their joint benefit and advantage. This, however, was denied by Bingham in the course of his evidence. His denial proceeded much further than the general statement characterizing the evidence of Fish as false ; for he stated particularly that he made no such agreement with Fish for the use and employment of this money, as was testified to by him, but that the arrangement which was made was that evidenced by the certificate of deposit issued by the bank itself; that it had received this sum of money from the plaintiffs as administrators, and undertook to return it to them, and that the money had not been withdrawn from the bank and appropriated to any other purpose with his consent or authority. It has been urged that the letter or memorandum, written by Fish, and subscribed by himself and Bingham, on November 9, 1883, was not consistent with this statement of this witness upon the trial. This letter was written previous to- the time when this deposit was • made, and after a larger amount of money had been deposited by the plaintiffs. in the same bank, and it contained the statement that $150,000 should remain in the bank upon the same terms and conditions as at *437 first, and then it proceeded to declare that on the first of each month subsequent to November, 1883, Mr. Fish should pay Bingham two and one-half per cent, per month on the sum of $50,000, and three per cent, on such further sum or sums as he might furnish from time to time, payable at the time the discounts are made. It was further stated that if Bingham deposited $50,000 more, he should have a Marine bank certificate of deposit bearing four per cent, interest, and that Mr. Fish should pay one and three-quarters per cent, per month on the $50,000, payable on the first of each month. These monthly payments of interest, it was stated, were to be made to W. H. Bingham, who was a son of the plaintiff, Samuel Bingham, and so far as they have been paid, they were paid to him. But this letter does not materially conflict with the evidence of the plaintiff Bingham in the statement made by him, denying the existence of any arrangement for the withdrawal of this particular $50,000 from the bank, and its use as a loan or advance to Grant & Ward, to be used in the course of their business. It, on the other hand, assumes that the money will remain in the bank, for which the certificate of deposit is given. No right or privilege to misappropriate, as it is alleged that was done, was given by this letter or the agreement made by W. H. Bingham, on November 14,1883. Neither did it appear, otherwise than by the evidence of Fish, that this particular money was ever taken from the bank and placed in the hands of the firm of Grant & Ward ; but what the witness Bingham testified was intended was, that the deposit should be made and remain in the bank, and by means of its existence Fish would probably be able to use more of the corporate funds, and in that manner derive such a profit from the speculations as would enable him to pay these monthly installments of interest.
That >? is broad a construction as by any possibil *438 ity can be placed upon the evidence of the witness Bingham, concerning the nature of the transaction, and if that was its character, then the money deposr i'ted did remain in the bank, and this action could legally be sustained for its recovery against the receiver. Whether this was the arrangement made between the witness Bingham, and Eish,. the president o£ the bank, was for the jury to determine, as the evidence was given during the progress of the trial. That of Fish was to the effect that the deposit was a mere form, or pretense, through which the money was to be placed in his hands, and to be afterwards used in speculations for the benefit of himself and the plaintiff Bingham, while that of this plaintiff was to the effect that no such understanding or arrangement existed, but that the money at all events was to remain in and be accounted for by the bank. Which of these theories was supported by the evidence, it was for the jurf to determine ; and they having found that maintained by the plaintiffs by th'eir verdict to be correct, their decision must now be accepted as conclusive in the action. The decision made by them was not unsupported, but the evidence sufficiently sustained it to render it final and obligatory upon these parties.
The defendants proposed to.read in evidence a mortgage executed by James D. Fish to the First National Bank of Mystic Bridge, the Mystic River National Bank, and Samuel Bingham, to secure the sum of $100,000. This was rejected, and an exception was taken to the decision of the court by which it was excluded. That decision appears to have been correctly made, for the reason that the mortgage was. in no manner connected with the demand in controversy. It had no bearing on the solution of the issues created by the defendant’s answer, neither was it proposed to-be shown by additional evidence that it was in any manner connected with the transaction in controversy *439 in this action. If it had been received it could have been of no service whatever to the defendants.
The defense stood upon the testimony of the witness Fish. That was not accepted by the jury, but the theory advanced by the plaintiffs was the one which they adopted, and that was sufficiently maintained by the evidence to entitle it to be now supported by the court. The judgment and the order should be affirmed.

Present, Davis, P. J., and Brady and Daniels, JJ.