## NOONAN *v.* BRADLEY.

1. An administrator appointed in one State cannot, by virtue of such appointment, maintain an action in another State, in the absence of a statute of the latter State giving effect to that appointment, to enforce an obligation due his intestate. If he desires to prosecute a suit in another State he must first obtain a grant of administration therein in accordance with its laws.

2 In an action by a plaintiff as an administrator, the objection that, as to the causes of action stated in the declaration, he is not, and never has been, administrator of the effects of the deceased, may be taken by a special plea in bar.

3. *It would appear* that the objection may also be taken by a plea in abatement.

4. One plea in bar is not waived by the existence of another plea in bar, though the two may be inconsistent in their averments with each other. The remedy of the plaintiff in such case is not by demurrer, but by motion to strike out one of the pleas, or to compel the defendant to elect by which he will abide.

b. In an action by a plaintiff as administrator, a plea to the merits admits the representative character of the plaintiff to the extent stated in the declaration, and if that statement is consistent with the grant of letters

---

* Sayles *v.* Northwestern Insurance Co., 2 Curtis, 212.

within the State, it also admits his right to sue in that capacity;—but such a plea admits nothing more than the title stated in the declaration.

6. The substitution in this court of an administrator as a party in place of his intestate on the record, in a case pending on appeal, only authorizes the prosecution of that case in his name; it confers no right to prosecute any other suit in his name.

7. In an action in one State by an administrator appointed in another State, on a bond given to the intestate, a plea that the bond was *bona notabilia* on the death of the decedent, in the State other than the one which appointed the administrator suing as plaintiff, and that an administrator of the effects of the decedent in that State has been appointed and qualified, is a good answer to the action. It is an averment of facts which in law excludes all right to, and control over, the property in that State by the foreign administrator.

8. Where a bond for the purchase-money of certain land was delivered upon an agreement indorsed upon the bond by the obligee that he would not enforce the bond in case his title to the land should fail: *Held*, that the agreement was not limited in its operation to the time when the bond matured or the penalty became forfeited, but was a perpetual covenant not to enforce the bond in case the designated event at any time happened.

9. Where doubt exists as to the construction of an instrument prepared by one party, upon the faith of which the other party has incurred obligations or parted with his property, that construction should be adopted which will be favorable to the latter party; and where an instrument is susceptible of two constructions—the one working injustice and the other consistent with the right of the case—that one should be favored which upholds the right.

10. The agreement above-mentioned indorsed on the bond constitutes a part of the condition of the bond, qualifying its provisions for the payment of the instalments of the principal and interest, and declaring, in effect, that the payments shall not be required and the obligation of the bond shall cease in case the event designated happens.

ERROR to the Circuit Court of the United States for the District of Wisconsin; the case being thus:

In October, 1855, Noonan, the defendant in the court below, purchased of one Lee, and received from him a warranty deed of certain real property situated in the State of Wisconsin, and for the purchase-money gave his bond in the penal sum of eight thousand dollars, conditioned to pay four thousand dollars in four equal annual instalments, with interest, secured by a mortgage on the property. At that time the premises were in the possession of one Orton,

holding them adversely to Lee, and in consequence of this fact Noonan required from Lee, as a condition to the delivery of the bond, an agreement against its enforcement in case his title to the land should fail (except as against the United States for the portion of the river (Milwaukee) beyond a certain designated line), and to deduct from the sum stipulated the amount of any incumbrances which might be found on the property. Such an agreement was accordingly given, and was indorsed on the bond. It was as follows:

I agree, if my title fails to the property for the consideration of which this bond is given, except as against the United States, for the portion of the river beyond the meandered line, that I wil' not *enforce* this bond; and if any incumbrances shall be found, that the amount of the same shall be deducted from the moneys to fall due on this bond.

J. B. Lee.

A clause in the mortgage provided, that upon default of Noonan to pay any of the instalments of the principal, or the interest, or the taxes on the property, as they became due, the entire principal of the bond with interest should, at the option of Lee, be immediately payable.

In March, 1859, default having been made in the payment of the several instalments, Lee elected to claim the entire amount as due, and brought suit against Noonan and others in the District Court of the United States for the District of Wisconsin, then exercising Circuit Court powers, to foreclose the mortgage, praying in his bill for a sale of the mortgaged premises, the payment of the debt secured, and for general relief. Noonan answered the bill, setting up that Lee's title had failed before the commencement of the suit; but the court, by its decree, made in January, 1860, found that there was due on the bond a sum exceeding five thousand dollars, and directed a sale of the mortgaged premises, and the app'ication of the proceeds to the payment of the amount foun l due, and that if the proceeds were insufficient the marshal should report the deficiency, and Noonan should

pay it with interest, and in default of such payment the complainant should have execution therefor.

From this decree Noonan appealed to this court, and, pending the appeal, for the purpose of trying his title to the land purchased, brought ejectment in one of the Circuit Courts of the State of Wisconsin against Orton, the party in possession. He then gave notice to Lee of the action, and required him to undertake its management. Lee at once retained counsel, who, for him, assumed the conduct of the action.

Pending the appeal in this court, and the action of ejectment in the State court, Lee died domiciled in New York, and Bradley, the plaintiff in this case, was duly appointed by the proper tribunal in that State administrator of his estate. On his application, Bradley was then substituted as representative of his intestate on the record in the case on appeal in this court.

At the December Term, 1862, this court gave its decision in the case, adjudging that the District Court erred in ordering the defendant Noonan to pay any deficiency which might remain of the principal and interest of the mortgage debt after applying the proceeds of the sale, and that complainant have execution therefor. To this extent the decree was reversed; in other particulars it was affirmed.

In the opinion delivered on rendering the decision the court observed, that upon the facts disclosed by the record it found no defect in the title of Lee, and that Noonan's title had not failed. In this language reference was of course had to the title as it appeared upon the evidence presented at the hearing in the District Court in January, 1860.*

Afterwards, in January, 1863, final judgment was rendered in the action of ejectment in the State court in favor of Orton, the party in possession, and against Noonan, upon the ground that the latter was not seized in fee of the premises. and acquired no title by his purchase from Lee, and that Orton was thus seized.

---

* Noonan v. Lee, 2 Black, 500.

When Lee died there were effects of value belonging to him in Wisconsin, and in February, 1865, one T. L. Ogden was duly appointed administrator of those effects by a tribunal having jurisdiction of the matter in that State; and he qualified and entered upon the discharge of his duties as administrator, and when this action was commenced had in his possession the bond given by Noonan to Lee on the purchase of the premises.

In September, 1866, Bradley, as administrator of the estate of Lee, under the appointment in the State of New York, brought the present action upon this bond of Noonan. The declaration set forth his title as administrator under this appointment, and contained four counts.

1  The first count was on the penalty of the bond simply.

2  The second was on the bond, setting out the condition written in the bond, and averring breach of the condition.

3. The third was on the bond, setting out the condition, averring a breach of the condition; and that Lee commenced suit to foreclose the mortgage given to secure the bond; the decree of the District Court, the appeal by Noonan; and that the Supreme Court, pending the appeal, substituted Bradley as administrator, affirmed a part of the decree; that Bradley filed the mandate in the court below; that a sale was had and confirmed, and $53.56 was applied " to the sums so due, by the terms of the said condition of said bond, and by the terms of said decree as aforesaid." " Yet the said defendant hath not paid said several sums *mentioned in said bond*," &c.

4. The fourth count was on the bond, giving a copy of the whole bond, and the *indorsement* upon it, and setting out the proceedings in the foreclosure suit more fully, and concluding : " Yet the said defendant hath not paid said several sums *mentioned in said bond*, and the condition thereof, nor either of them, nor any part thereof," &c.

Every count of the declaration was upon the *bond* itself, *not upon the decree in the foreclosure suit*, and the breach alleged as furnishing the cause of action was the non-payment of the money *called for by the bond*.

To the declaration the defendant interposed three pleas:

1st. That as to the supposed causes of action mentioned therein, the plaintiff was not and never had been administrator of the effects of the deceased.

2d. That there were effects of value of the decedent at the time of his death in the State of Wisconsin, among which was the bond in suit; that T. L. Ogden was duly appointed by a tribunal in that State administrator of those effects, and had qualified and entered upon, and was engaged in the discharge of his duties as such officer at the time the action was commenced; and that by reason of this appointment and qualification, the effects of the decedent, in Wisconsin, were, under the laws of that State, vested in him, with all rights of action in relation thereto, and that as a consequence the letters issued to the plaintiff in the State of New York, with reference to the causes of action stated in the declaration, were void and of no effect.

3d. That the title of Lee to the premises sold had failed, the plea setting up the agreement indorsed on the bond, and the proceedings and judgment in the ejectment suit, to bring the case within the agreement.

To the pleas the plaintiff demurred; the Circuit Court sustained the demurrer, and entered final judgment thereon in favor of the plaintiff for the penalty of the bond; and the defendant brought the case to this court on writ of error.

*Messrs. M. H. Carpenter and I. P. Walker, for the plaintiffs in error; Mr. J. S. Brown, contra.*

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

The inquiry here is: What is the legal effect of the facts presented by the pleas of the defendant?

The first plea puts in issue the representative character of the plaintiff in the State of Wisconsin. It denies that, as to the causes of action stated in the declaration, he is or ever has been administrator of the effects of the deceased, and thus raises the question whether an administrator ap

pointed in one State can, by virtue of such appointment, maintain an action in another State to enforce an obligation due his intestate. And upon this question the law is well settled. All the cases on the subject are in one way. In the absence of any statute giving effect to the foreign appointment, all the authorities deny any efficacy to the appointment outside of the territorial jurisdiction of the State within which it was granted. All hold that in the absence of such a statute no suit can be maintained by an administrator in his official capacity, except within the limits of the State from which he derives his authority. If he desires to prosecute a suit in another State he must first obtain a grant of administration therein in accordance with its laws.

So far has this doctrine been extended that in *Fenwick* v. *Sears's Administrators,** where the plaintiff had obtained letters of administration in Maryland, before the separation of the District of Columbia from the original States, it was held by this court that he could not, after the separation, maintain an action in that part of the district ceded by Maryland by virtue of these letters, but that he must take out new letters within the district.

The same doctrine is as applicable to the case of executors as to that of administrators; the right to sue in both instances depending upon the letters.†

Whether the objection to the character of the plaintiff as administrator or executor should be taken by a plea in abatement or a special plea in bar, would appear to have been, at one time, a matter upon which there was some diversity of opinion. In some of the cases the language used would indicate that a plea in abatement was the only appropriate form in which the objection could be presented, whilst in other cases the objection taken by a special plea in bar has been sustained. It was sustained by this court, when taken by a special plea in bar, in *Fenwick* v. *Sears's Administrators*, and in *Dixon's Executors* v. *Ramsey's Executors*, already cited. In the latter case a foreign executor brought an action in the

---

\* 1 Cranch, 259.

† Dixon's Executors *v.* Ramsay's Executors, 3 Cranch, 319.

District of Columbia. The defendant pleaded that he had not obtained letters in the District or in the United States, and, on demurrer, the plea was sustained.

There is no principle in pleading which should prevent the objection from being taken in this way. It is only in virtue of his representative character that the plaintiff is entitled to the matters in controversy, and a plea which denies to him that character is, in its nature, a plea in bar of the action.

In *Langdon and others* v. *Potter*,* the Supreme Court of Massachusetts held directly that the objection taken in that case, that no letters of administration had been granted to the plaintiff except under the authority of another State, was pleadable in bar, and in referring to the diversity in the cases and opinions, as to the form of the plea by which the objection should be presented, observed that they might perhaps be "reconciled by considering the plea, that the plaintiff is not administrator, as one of those which may be pleaded in bar or in abatement." " There are many such cases," said the court, " where the matter of the plea goes to preclude the plaintiff forever from maintaining the action, and it may therefore be pleaded in bar; yet, as in point of form it is in disability of the plaintiff, it may also be pleaded to the person." These observations are just, and explain much of the apparent conflict in the decisions of different courts, or of the same court at different times.

The language used by this court in *Childress* v. *Emory*† and *Kane* v. *Paul*,‡ cited by counsel, was not intended to deny that the objection to the authority of the plaintiff as administrator or executor could be taken by a plea in bar, but was only intended to indicate that the objection must be specially pleaded, and could not be urged on demurrer to the declaration for alleged insufficient exhibition of letters testamentary, when profert of the letters was made, or under a plea to the merits.

In the first case the court observed that if the defendant

---

* 11 Massachusetts, 313.        † 8 Wheaton, 642.        ‡ 14 Peters, 33.

desired to object to the letters as insufficient, he should have craved oyer of them, and had them brought before the court, that unless oyer was craved and granted, the letters could not be judicially examined, and then added that if the plaintiffs were not executors, that objection should have been taken by way of abatement, and did not arise upon a demurrer in bar. The point decided was that the objection could not be taken, when profert of letters was made, without oyer of them, and did not arise in such case upon demurrer. There was no question as to the form of the plea to be used, if the objection were presented in that way; and it is clear that no determination as to the form was intended.

In the second case the plea was non-assumpsit, which admitted plaintiff's right to sue. It was objected that the letters testamentary appeared on their face to have been granted in violation of the law of Maryland, but the court observed that the plea was the general issue, and that a judicial examination into their validity could only be gone into upon a plea in abatement, meaning evidently that such examination could not be had unless the objection were taken by special plea. There was no intention on the part of the court to determine as to the form of the special plea in such cases.

The objection to the character of the plaintiff as administrator in this case is not waived by the third plea, which goes to the merits, as contended by counsel. One plea in bar is not waived by the existence of another plea in bar, though the two may be inconsistent in their averments with each other. The remedy of the plaintiff in such case is not by demurrer, but by motion to strike out one of the pleas, or to compel the defendant to elect by which he will abide. But here there is no inconsistency in the pleas; the one denying any right in the plaintiff, in his capacity as administrator, to the subject of controversy, and the other the release of the defendant from liability on the bond in suit by failure of its consideration. The averments of both may be true.

The proposition of law which the counsel invokes, that a plea to the merits admits the representative character of the

plaintiff, and his right to sue in that capacity, is only appli-
cable where no other plea than one of that kind is interposed;
it does not apply where a special plea traverses that charac-
ter.   A plea denying that an intestate entered into the obli-
gation upon which the action is brought, or averring that
he was released therefrom, standing alone, is undoubtedly
an admission of the representative character of the plaintiff
to the extent stated in the declaration, and if that statement
is consistent with the grant of letters within the State, is also
an admission of his right to sue in that capacity.   The exe-
cution or the release of the obligation is in such case the only
matter in issue, and of course is the only matter upon which
evidence need be called or argument had.   But, in the case
at bar, had there been no other plea than the third plea, which
goes to the merits, the character of the plaintiff, as adminis-
trator in Wisconsin, would not have been admitted, for the
reason that the declaration states that the grant of adminis-
tration to him was by letters issued in the State of New York,
and the plea to the merits only admits the title as stated in
the declaration.

   This effect of a plea to the merits was decided as long ago
as the time of Lord Holt, in the case of *Adams* v. *The Ter-
tenants of Savage.** In that case the plaintiff brought a *scire
facias* against the defendants, reciting a judgment recovered
by his intestate against Savage, and that administration was
committed to him by the Archdeacon of Dorset, whose juris-
diction did not extend to the place where the judgment was
rendered.   The tertenants traversed the seizin of Savage,
and the finding being against them, motion in arrest of judg-
ment was made, on the ground that the administration com-
mitted to the plaintiff was void.   It was urged for the judg-
ment, that though the plaintiff had shown a bad title, the
defendants not traversing it, or taking any advantage of the
invalidity of the administration, but pleading to the merits,
admitted that the plaintiff was entitled to sue, and should
not be permitted, when the right was tried against them, to

---

* 6 Modern, 134.

controvert what they had declined to insist upon; but Chief Justice Holt said: "If the plaintiff had not set forth what kind of administration he claimed by, but only generally alleged himself administrator of the goods and chattels of the intestate, and the defendant had not put you upon showing it by craving oyer of the letters of administration, as he might have done, but pleaded over; that had been an admission of the plaintiff's having a right of suing as administrator as he had alleged." And after stating that the plaintiff made title to himself by an administration which was invalid, the Chief Justice continued: "And when you yourself affirm this to be your title, how can we intend you have another; for of your own showing this is your title, which is manifestly bad? And there is a vast difference where a title does not appear fully for the plaintiff, and the party will not controvert with him about that, for then it may be well presumed if the party were not well satisfied of plaintiff's title he would have insisted on it in due time, and where the plaintiff himself shows he has no title, for then the court has no room for intendment." The authority of this case has not, so far as we are aware, ever been doubted, and were there no other ground against the position of the plaintiff, it would be decisive.

The substitution in this court of the plaintiff as administrator, in place of the intestate, in *Noonan* v. *Lee*, does not affect the present case, or give the plaintiff any greater right of action than if no such substitution had ever been made. It only authorized the further prosecution of that suit in his name, and gave no right, and could give no right, to prosecute any other suit in his name.

Nor is the position of the plaintiff aided by the statute of Wisconsin, which enables foreign executors and administrators to sue in certain cases in the courts of that State. That statute only applies where no executor or administrator of the estate of the decedent has been appointed in the State, and then only in the counties where the foreign executor or administrator has filed in the Probate Court an authenticated copy of his appointment.

The second plea, like the first, puts in issue the representative character of the plaintiff in Wisconsin; not by direct denial, as in the first plea, but by averring that there were effects of the decedent in that State at the time of his death, among which was the bond in suit; that an administrator of those effects had been duly appointed and qualified, and had entered upon, and was engaged in, the discharge of his duties as such officer at the time the action was commenced, and that by reason of this appointment and qualification the effects of the decedent, under the laws of Wisconsin, were vested in him, with all rights of action in relation thereto, and that as a consequence the letters issued to the plaintiff in the State of New York, with reference to the causes of action stated in the declaration, are void and of no effect.

This plea is a good plea in bar to the action. The bond in suit was bona notabilia in Wisconsin, and a plea that the subject of action constituting such bona notabilia was, on the death of the decedent, in another jurisdiction than the one which appointed the administrator suing as plaintiff, has always been a good answer to the action. It is an averment of facts which in law excludes all right to, and control over, the property in that State by the foreign administrator.*

The third plea sets up a defence to the action on the merits—namely, that the title to the premises, for the consideration of which the bond in suit was given, has failed; and that as a consequence, under the agreement of the intestate, the right to enforce the bond has ceased.

This plea alleges that the bond in suit was given only in consideration of the conveyance of a warranty deed by the intestate, and an agreement that in case his title failed he would not enforce the bond, and that by judicial proceedings, of which the intestate had notice and took charge, it was determined that the intestate was not seized at the time he executed the deed in fee of the premises, but that Orton, the party then in the possession, was thus seized of them.

---

* See 1 Saunders, 274, note 3; Stokes *v.* Bate, 5 Barnewall & Cresswell 491.

The effect of this plea depends upon the construction which is given to the agreement of the intestate not to enforce the bond in case his title failed. The plaintiff contends that this agreement ceased to have any operation after the maturity of the bond or the forfeiture of the penalty; and that if subsequently the title failed, that fact could not be pleaded with the agreement in bar to an action on the bond, either by way of release or estoppel.

The argument presented in support of this construction is founded mainly upon the improbability that the parties could have contemplated a postponement of payment beyond the period stipulated in the bond. They could not, says the counsel, have intended to set aside the obligation to pay at those times; and it would have been a violation of the spirit of the agreement for the vendee to have refused the payments as they became due, if the title had not then failed.

Undoubtedly the parties contemplated that the payments would be made as they matured, but they also contemplated that payments should cease whenever the title of the grantor failed. They may have supposed that the validity of the title would be determined to their satisfaction before the maturity of any of the instalments stipulated, but they have inserted no provision in the agreement which limits its operation to that or to any other period. It is a perpetual covenant not to enforce the bond upon the happening of a certain event. It matters not that the obligee or his representative might have compelled its payment before the happening of that event. What would have been the rights of the obligor in that case; whether he would have had any remedy to recover back the amount paid, or would have been compelled to look to the covenant of warranty in his deed, are questions not now before us for determination. It is sufficient for our present consideration that the bond has not as yet been enforced, and the title to the property, which the intestate sold and undertook to convey to the defendant, has failed. It would be against manifest justice if, under these circumstances, the representative of the vendor, notwithstanding the vendor had no title to convey, could recover

of the defendant as though the vendor had transferred to him a good and perfect one.

If there were any doubt as to the construction which should be given to the agreement of the intestate, that construction should be adopted which would be more to the advantage of the defendant, upon the general ground that a party, who takes an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a construction given to the instrument favorable to him; and on the further ground that when an instrument is susceptible of two constructions—the one working injustice and the other consistent with the right of the case—that one should be favored which standeth with the right.*

This agreement not to enforce the bond, which is conditional in its terms, depending for its operation upon the happening of a contingent event, has, by the happening of that event, become absolute, and may be pleaded as a release to the action. It constitutes in fact a part of the condition of the bond, qualifying its provisions for the payment of the instalments of the principal and interest, and declaring, in effect, that the payments shall not be required, and the obligation of the bond shall cease in case the event designated happens.†

The decision in the foreclosure suit only determined that at the time the hearing was had in that case in the District Court, in January, 1860, the title had not failed. The language of the court in rendering the decision shows this. It says: "As the facts are disclosed in the record we find no defect in the title of Lee. We find that Noonan's title has not failed, and no incumbrance upon the property is shown. There has been, therefore, no breach of the agreement indorsed on the bond, nor has there been any breach of the covenant of general warranty in Lee's deed to Noonan." The case is entirely changed now; and facts not existing, or at least, not established then, but since determined by judi-

---

* Mayer v. Isaac, 6 Meeson & Welsby, 612.
† Burgh v. Preston, 8 Term, 483.

cial proceedings, present a case upon which this court has heretofore never passed.

We are of opinion that the pleas of the defendant constitute a bar to the action, and that the Circuit Court erred in sustaining the demurrer to them. It follows that its judgment must be REVERSED, and the cause remanded FOR FURTHER PROCEEDINGS.

Mr. Justice CLIFFORD, with whom concurred SWAYNE and DAVIS, JJ., dissenting.

I dissent from the opinion and judgment of the court in this case upon two grounds, which I will proceed to state without entering at all into the argument to support the respective propositions—

1. Because I think that the alleged disability to sue should have been pleaded in abatement and not in bar. Undoubtedly a different rule of pleading prevailed at common law, but there are three reported decisions of this court in which it is held that such a plea in a case like the present must be in abatement, and in view of our complicated system of jurisprudence I am not inclined to overrule those cases. They have been regarded as authorities for many years, and I am of the opinion that the rule which they establish is the better one as a rule of pleading in the Federal courts than the rule which prevailed at common law.*

2. I am also of the opinion that the decree in the former suit is conclusive as to the rights of the parties, and that it constitutes a complete answer to the defence in the present suit.†

---

* Childress *v.* Emory, 8 Wheaton, 642; Kane *v.* Paul, 14 Peters, 33; Ventress *v.* Smith, 10 Id. 161.

† Noonan *v.* Lee, 2 Black, 499.