## AMERICAN TRUST & SAVINGS BANK v GITNESKEY et

Ohio Common Pleas, Hamilton Co

Decided Sept 11, 1936

Louis R. Schear, Cincinnati, for plaintiff.

## OPINION

By BAILEY, J.

This cause came on to be heard pursuant to an order for the examination of a judgment debtor, Louis Gidney. The case was recognized as one that had been before this division of the court heretofore. Examination of the court files disclosed that seven or eight former proceedings of the same kind had been instituted by the creditor; that all of said proceedings had proved fruitless.

The defendant not being represented by counsel, the court felt an obligation to determine whether the judgment creditor was entitled to pursue these futile examinations, which harass the debtor, impose expense upon the county, and take up the time of the courts.

This case began as a suit in the Municipal Court of Cincinnati against two defendants, only one of whom, Louis Gidney, is concerned in this proceeding. Judgment was rendered against him for the plaintiff in said Municipal Court on August 27, 1931, in the sum of $210.00, interest amounting to $14.40, and the costs of said case.

On September 8, 1931, a transcript of said judgment was filed with the clerk of this court and docketed as No. 46629, and on the same date an execution was issued on said judgment, which execution was returned on September 24, 1931, wholly unsatisfied for want of property on which to levy. **No subsequent execution has been issued on said judgment.**

On January 4, 1933, a release was filed in said case releasing certain real estate in consideration of the payment of $75.00, which reduced the debt by that amount. The case then rested without action until November 9, 1934, when new counsel appeared in the case and commenced a proceeding in aid of execution ordering the debtor to appear for examination November 20, 1934. Debtor appeared and was examined, and the proceeding was discontinued.

On December 21, 1934, a second proceeding in aid was instituted and from that time, up to and including the present proceeding which was commenced on August 20, 1936, there have been seven or eight proceedings for examination of the judgment debtor, in aid of execution, based on the judgment rendered August 27, 1931, and on said execution dated September 8, 1931.

Sometimes the defendant did not appear for examination as ordered by the court, whereupon a rule to show cause why he should not be punished for contempt was issued. On one occasion an order for the arrest of the debtor was issued and he was brought into court by the sheriff. Each of said rules for contempt, including the one in which there was an arrest, was dismissed without the defendant being found guilty of contempt, and it must be presumed, therefore, that the defendant cleared himself of contempt to the satisfaction of the judge who heard such proceeding.

None of said examinations disclosed any property of the defendant, or resulted in any order to apply property to the payment of the judgment. The proceedings have been entirely fruitless. Hearings have been had from time to time before eight judges of the Common Pleas Court. The entries on the clerk's docket in this case fill four and one-half pages.

The plaintiff has paid no court costs since the time of the issuing of the execution in September, 1931. The fees of the sheriff for the service of the various orders in the case since that time exceeded twenty dollars, no part of which has been paid. The costs due to the clerk probably amount to as much.

The condition thus disclosed by the record calls for some consideration of the respective rights herein of the plaintiff, the

defendant, and the public. It has been assumed, generally, that under §11768, GC, a plaintiff creditor is entitled to as many orders for the examination of a debtor as he may desire.

The rights of creditors are not to be ignored, for if they do not obtain payment from their debtors, they may themselves be unable to pay their creditors. Neither should any act of a debtor, in refusing to obey an order of the court, be condoned, even though such an order is erroneous. It is not void, and it is the defendant's duty to obey the same unless and until it is set aside. If parties to a cause could decide for themselves what orders of the court they would obey, and what could be disobeyed with impunity, chaos would result. The enforcement of legal obligations, including the collection of judgments, is an important function of the courts.

The practice, however, of bringing judgment debtors into court for repeated examinations, most of which prove futile, has been the subject of considerable criticism, and the condition calls for an examination of the question whether, as generally assumed, such right of the creditor is absolute, that is, whether the court has no discretion but must on application of the creditor grant orders for the examination of the judgment debtor from time to time, provided only that a judgment has been obtained and an execution returned unsatisfied.

Examination of the authorities on this question leads to the conclusion that the courts are not helpless. Three questions are involved:

1. Is the judgment creditor in such case entitled to a second order in aid of execution, without issuing a second execution and having it returned unsatisfied?

2. Is the plaintiff entitled as of right to successive examinations of the debtor without first making some showing that the debtor has acquired property since the preceding examination?

3. Is the judgment creditor entitled to such an order without paying the costs which have been made by plaintiff in the former proceedings?

No authority was cited by counsel in support of the claim of right to proceed with multiple examinations based on a single execution.

Sec 11768, GC, provides that "when an execution has been returned unsatisfied, 'the judgment creditor shall be entitled to an order' * * * requiring the debtor to appear * * *."

Sec 10213, GC, provides, however, that words in the singular include the plural.

It is necessary therefore to consider the construction of similar statutes in other jurisdictions. In Clarke v Londrigan, 40 New Jersey Law, 310, it was held that:

"When a judgment creditor has obtained an order for the examination of the defendant in the judgment, on supplementary proceedings, and the order has been fully executed, and the proceeding heard upon its merits and dismissed, the case is res judicata; the parties are precluded as to all matters existing previous to that time, and which were embraced in the consideration and judgment of the court.

"A new examination can only be asked for on the ground that after the judgment of the court in the previous proceedings, the debtor had become possessed of property, in respect to which the creditor was entitled to examine him under the statute."

The court said on page 312:

"The only ground upon which the judgment creditor could ask a new examination was, that after the judgment of the court in the previous proceedings, the debtor had become possessed of property, in respect to which the creditor was entitled to examine him under the statute, otherwise it would seem that the creditor could, ad libitum, harass and oppress the debtor by repeated examinations, after the merits of the case had been fully considered and determined."

To the same effect is Losee v Allen, 40 N. Y. Sup., 349.

If after a first examination the debtor should acquire property in the form of land or tangible personalty, such property could be subjected to the payment of the judgment by levying an execution without any necessity for a proceeding in aid of execution.

It appears therefore that a second execution should be deemed a prerequisite to a second examination.

The next question is whether if such second execution has been issued and returned unsatisfied the court is required to make multiple orders for the examination of the judgment debtor without any showing that such debtor probably has acquired property since the preceding examination.

That the court is not required to issue such futile and often harassing process has been held by high authority. In Canavan

v McAndrew, 40 Hun. (New York) 46, the syllabus is:

"A judgment creditor is not permitted to harass his debtor by successive examinations in supplementary proceedings; after he has once fully examined him; a second order will not be granted, unless some good reason be given therefor, even though the second application be founded upon another judgment held by the same creditor against the same debtor."

The court said, page 47:

"The spirit and intent, rather than the letter of the statute, must govern. If the plaintiff's position be correct he has an absolute right to examine the defendant on every judgment he may obtain, no matter how numerous they may be. This would result in making the statute a means of oppression and could not be tolerated."

In the present case in which seven or eight proceedings for the examination of a debtor have been instituted, and the debtor has been brought into court and all of the examinations have proved fruitless, this court has no hesitation in holding that before the process of the court can again be invoked requiring the defendant to appear for another examination, proof must be made by the plaintiff that there is at least a reasonable probability that the debtor has acquired since the previous examination property which can be and should be subjected to the payment of the judgment.

If it be claimed that the statute, §11768, GC, is mandatory the answer is that any court of general jurisdiction has inherent power to prevent the abuse of its process. It has been held by the highest authority that a court may construe a statute in accordance with equity.

"When a court of law is construing an instrument, whether a public law or private contract, it is legitimate if two constructions are fairly possible, to adopt that one which equity would favor."

Washington R. R. Co. v R. R. Co., 160 U. S. 101.

Another justice of the Supreme Court of the United States substantially expressed the same thought, as follows:

"When an instrument is susceptible of two constructions, the one working injustice and the other consistent with the right

of the case, that one should be favored which standeth with the right."

Noonan v Bradley, 76 U. S. 394, 407.

At an earlier date the rule was stated by a great English judge, Lord Mansfield, as follows:

"General rules are wisely established for obtaining justice with ease, certainty and dispatch, but the great end of them being to do justice, the courts are to see that it be really attained."

The third question involves the rights of the taxpayers in this county as well as the rights of the defendant.

The plaintiff has called upon the clerk and the sheriff to perform certain services in this fruitless litigation and has not paid them the statutory charges for such services. These officers in Ohio do not receive costs for themselves, being paid fixed salaries. Any costs which are not paid constitute a direct loss to the county, amounting in this case to approximately $40.00.

It has always been the policy of the state of Ohio to permit its residents to resort to the courts without any barrier of prohibitive expense in legal proceedings, and it has been held that except where specifically provided by statute the courts cannot require a cost deposit or payment of costs in advance. This policy and rule of law, however, do not exempt litigants from liability for costs after they have been incurred, although, usually such liability is not enforced until after final judgment in the case. But when successive actions are brought the court may stay the second, or later actions, until the plaintiff pays the costs for which he is liable in the first or preceding case.

In Re: Barr, 30 B. 386, in which case Judge Shroder, reviewing the authorities, showed clearly that the right and duty of the court to protect its officers, as well as the defendant, by requiring the payment of the costs in the preceding case was inherent. To the same effect is Arnold v Coal Co., 5 N.P. 329, by Judge Dempsey, another very learned jurist of this county.

In Penn Co. v West Penn. Co., 10 Oh St, 516, 522, the court said:

"Sec 11628, GC, gives to the trial court a discretion in the award and taxation of costs according to the equities of the case, and, if it should be made to appear that a judgment creditor is seeking to obtain re-

peated adjudications and to have one judgment after another entered upon the same cause of action and against the same defendant it would be the duty of the court in the exercise of its sound discretion to assess the costs of such repeated adjudications against the plaintiff in the action."

In State v Manton, 11 Oh Ap 364, the first paragraph of the syllabus is:

"Where, in a former action between the same parties and in the same cause, costs have been adjudged against a party, the court upon motion of the adverse party may grant an order staying a subsequent proceeding until such costs are paid."

The decision was by the judges of the Court of Appeals for this district, sitting at Toledo, and the court said on page 366:

"The only penalty we know of for the bringing and the voluntary dismissal of a civil action, including one of this class, is that the plaintiff shall pay all costs he has occasioned. This, generally, he must do before he is authorized to renew his suit. While the costs of a dismissed action remain unpaid, the commencement of a subsequent suit for the same matter * * * will be stayed by the court upon a proper application until paid." Wait v Westfall, 161 Ind., 648, 651.

In each of the proceedings in the pending case the plaintiff made the costs and is liable for them. If plaintiff recovered judgment against the defendant for such costs it can enforce that judgment, but that does not prevent the collection of the costs from the party who made them. Eckstein v Straus, 31 B. 70; Castle v Roach, 8 N.P. 212; Abbey v Fisher, 23 Oh St 403; 11 O. J., p. 70, §72. If the plaintiff can recover the costs from the defendant, plaintiff thereby will obtain reimbursement, but the primary liability is upon the plaintiff as the party making such costs; and in fact the court specifically adjudged the costs in two of the proceedings in this court against the plaintiff; in the other proceedings no specific order was made as to the costs. All of the proceedings herein have failed.

Under the authorities cited the court may and should protect the taxpayers by requiring the plaintiff to pay the costs which it has made before it proceeds with further examinations of this debtor.

The present proceeding for the examination of the debtor will therefore be discontinued, and it will be ordered that no further proceeding be instituted by the plaintiff unless and until:

1. An alias execution shall be issued and returned unsatisfied;

2. A prima facie showing shall have been made that the judgment debtor probably has property which may be reached by the proceeding;

3. The costs heretofore made by plaintiffs shall have been paid.

Such an order is supported by authorities and is in accordance with the humane policy of the state of Ohio which abolished imprisonment for debt one hundred years ago, and at an early date provided by law for exemptions within which even debtors can live and support their dependents.

The right to proceed by garnishment of a debtor of the judgment debtor as authorized by §11772, GC, is not involved on this hearing.

Nothing herein is intended to criticize the conduct of counsel. After the defendants are brought into court for examination in such proceedings there is no attempt to "bully" the defendants, in fact the demeanor of counsel toward the defendants has usually been considerate and almost apologetic.

In another case which came on for hearing on the same day as the Gidney case it appears that a judgment was rendered by a justice of the peace for the sum of $15.44; that the costs before the justice of the peace amounted to $10.70, making a total of $26.14; that the filing of the transcript in this court made a cost of $1.35; that since that time no other executions have been issued. Seven orders in aid of execution have been issued and served at an expense for the sheriff's costs alone amount to $14.50, practically as much as the principal of the judgment, with the clerk's costs to be added. In none of these examinations was any money or property found which could be applied to the judgment, and the proceedings have been entirely without result.

The same order as in the Gidney case should be made in this case.